Alter & Brescia, LLP
*Proposed Attorneys for the Debtor*
550 Mamaroneck Avenue, Suite 410
Harrison, New York 10528
(914) 670-0030

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| 49 BLEECKER INC., | Case No. 21-10312-mew |
| Debtor. | |

-----------------------------------------------------------X

## DEBTOR'S OPPOSITION TO MOTION OF CREDITOR, ROGERS INVESTMENTS NY, LLC, TO TERMINATE, LIFT AND/OR MODIFY AUTOMATIC STAY

The Debtor, 49 Bleecker Inc. ("49" or "Debtor"), by its proposed attorneys, Alter & Brescia, LLP, respectfully states as follows:

1. Debtor submits this opposition (the "Opposition") in response to the Motion of Rogers Investments NY, LLC ("Rogers") to Terminate, Lift and/or Modify Automatic Stay (the "Motion"). In support of this Opposition, the Debtor submits the accompanying Affirmation of Doron Zabari, the sole owner of Debtor, which is incorporated by reference herein.

### BACKGROUND

2. On February 18, 2021, Debtor filed a *pro se* petition under Chapter 11 and became a Debtor in Possession.

3. As of the date hereof Debtor has not filed its schedules, but has retained Alter & Brescia, LLP to qualify as its attorneys, and to file schedules and comply with all filing requirements. It is anticipated that by the return date of the present motions by

Rogers, and a motion by the U.S. Trustee to dismiss or convert this Chapter 11 case, all required filings, including counsel retention, will be completed.

4. The U.S. Trustee's motion was filed on March 4, 2021, and is returnable on April 20, 2021.

5. The Rogers' motion for relief from the automatic Stay was filed on March 15, 2021, some 25 days after the Chapter 11 case was filed.

6. The Debtor is a New York corporation, organized on November 29, 2012, and is solely owned and managed by Doron Zabari.

7. On December 12, 2012, Debtor entered into a lease for the third floor of 49 Bleecker Street, New York, NY. This is one floor of a multi-story commercial building. The lease commenced on January 1, 2013 and terminates on January 31, 2023. The lease granted the tenant one five year renewal period. The concept of the lease was for Debtor to expend its own money to renovate the space, to create 7 rentable units, which could be rented at an amount which would render the expenditures by Debtor profitable. By a successful termination of the Lease, Rogers would realize a substantial windfall representing the hundreds of thousands of dollars expended by the Debtor in rehabilitating and updating the Lease Premises.

8. Landlord alleges that pursuant to the lease it sent a Notice of early termination and that the lease has been purportedly terminated. This allegation is successfully rebutted by the decision of the Civil Court of the City of New York dated July 22, 2019 (attached as Exhibit "A") clearly denying landlord's attempt to declare the lease terminated.

9. It is noteworthy that Rogers' motion completely ignores the Civil Court decision against it. This omission is intentional and disingenuous.

10. Rogers does discuss and tries to litigate as part of this motion, the Supreme Court's refusal to concede that the lease was terminated, but rather scheduled a traverse hearing on the question of service of the termination notice.

11. The filing of the Chapter 11 petition has stayed the traverse hearing, and therefore the lease remains in full force and effect.

12. Sometime during the year 2019, Rogers, in an effort to "self-help", convinced the sub-tenants on the third floor of 49 Bleecker that they should pay their monthly rent to one of two law firms, engaged by Rogers, without any judicial instruction. Most of the tenants have been doing so for several years. Debtor has no records as to which tenants paid their rent money to these law firms, how much they are holding, if any escrow agreements are in existence, who is paying their fees, or where the funds are being kept. The law firms presumably holding the rental monies, received from the sub-tenants, are Blank Rome, LLP and Schwartz Sladkus Reich Greenberg Atlas LLP. Neither firm has signed an escrow agreement and their relationship and an accounting of the funds being held by them will be the subject matter of proceedings before this Court. Those funds are the property of the Debtor.

13. Debtor will be making formal demands on both legal firms, and on Rogers, to comply with Bankruptcy Section 543 and deliver all funds being held to Debtor immediately. Unless the funds are immediately turned over to the Debtor, litigation in this Court will ensue.

## ARGUMENT

14. The vast majority of Rogers' motion constitutes an effort to convince this court that it will ultimately prevail in convincing a court, (any court), that it terminated the lease. They have lost this argument in the Civil Court and have been thus far

unsuccessful in the Supreme Court.

15. This is not the proper time to try this issue.

16. The Stay was in effect for 25 days when this motion was filed.

17. The entire rationale for the automatic stay is to afford a Chapter 11 debtor an opportunity to catch its breath, work out reorganization strategy and file a Plan and Disclosure Statement. Debtor has now begun the process, retained experienced bankruptcy counsel and is ready to assume its responsibilities as a Debtor in Possession.

18. The Rogers' motion is premature as well as meritless. A determination as to the status of the lease can be made by this court at an appropriate time. At this point the Debtor should be completing its schedules, establishing its DIP bank account, (which has been done), complying with all U.S. Trustee requests for documents and information, meeting with its counsel, and trying to prioritize its efforts. Debtor is a one-man operation and has not yet engaged state court counsel to represent it at a traverse hearing. This can wait. It is respectively suggested to this court that the present motion be denied without prejudice, or adjourned for 120 days to enable the Chapter 11 process to proceed. Rogers has made no showing of an exigency existing which would merit the granting of this Motion, at this early date. Moreover, the sub-tenants are reportedly paying their rent and when the funds are returned to the Debtor, the Debtor will be in position to assume the lease and pay the rental arrears, and file its plan.

19. A final observation: the motion at Paragraph 30 to 36, takes the somewhat absurd position that the subject lease is not essential to Debtor's reorganization. Operating the lease premises is Debtor's sole business. The lease and the money being wrongfully retained by Rogers' designees are Debtor's sole assets and sole business.

4

Without the lease there is no debtor and no chance to reorganize and pay anything to its creditors. The lease is necessary for Debtor to survive. In determining objective futility, the inquiring court assesses whether "there exists the realistic possibility of an effective reorganization." *Squires Motel, LLC v. Gance*, 426 B.R. 29, 34 (NDNY 2010) (citing *In re Carolin Corp.*, 886 F. 2d 693, 698-701 (4th Cir. 1989)).

20. The Debtor has done no wrong. Debtor negotiated its Lease in good faith, has paid the monthly rent, spent a great deal of money upgrading the Premises, prevailed a judicial challenge in the Civil Court of the City of New York and has held off a second attempt to terminate the Lease in the New York State Supreme Court. At this early juncture, equity would certainly favor the Debtor.

21. Indeed, preserving the value of the bankruptcy estate is one of the fundamental tenets of corporate insolvency law: "[t]he purpose of a business reorganization case, unlike a liquidation case, is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return to stockholders." *In re HBA East*, 87 B.R. 248,249 (Bankr. E.D.N.Y. 1988) *quoting* H.R. Rep. No. 595, 95th Cong., 1st Sess. 220-21 (1977).

22. Therefore, the Debtor objects to Roger's Motion and requests that the Motion be denied in its entirety, together with such other and further relief as to this Court seems just and proper.

Dated: Harrison, New York
April 9, 2021

Alter & Brescia, LLP
*Proposed Attorneys for the Debtor*
550 Mamaroneck Avenue, Suite 410
Harrison, New York 10528
(914) 670-0030

By: _____
Bruce R. Alter

Alter & Brescia, LLP
*Proposed Attorneys for the Debtor*
550 Mamaroneck Avenue, Suite 410
Harrison, New York 10528
(914) 670-0030

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                                      Chapter 11

    49 BLEECKER INC.,                              Case No. 21-10312-mew

                     Debtor.

-----------------------------------------------------------X

### DEBTOR'S AFFIRMATION IN SUPPORT OF OPPOSITION TO MOTION BY ROGERS INVESTMENTS NY, LLC, TO TERMINATE, LIFT AND OR MODIFY AUTOMATIC STAY

Doron Zabari, under penalty of perjury, hereby affirms as follows:

    I am the sole owner of 49 Bleecker, Inc., the Debtor and Debtor in Possession in the above captioned Chapter 11 case.

    I have read the opposition papers filed by Debtor's proposed attorneys, dated April 9, 2021, and I am personally familiar with the facts stated therein.

    I am familiar with all documents referred to, and similarly familiar with all prior judicial proceedings between the parties.

    I affirm that I believe that all facts stated in the opposition papers are true and correct.

April 9, 2021
                                                                          Doron Zabari

EXHIBIT A

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK, PART 109
-----------------------------------------------------------------X
ROGERS INVESTMENTS NY, LLC,
        Petitioner-Landlord,

    -against-

49 BLEECKER INC.
49 Bleecker Street
Unit 300, 301, 302, 303, 304, and 305,
New York, New York 10012
        Respondent-Tenant,

SABAH SHOES, ROMAN & WILLIAMS GUILD,
GRAND ARMY, NOW-A-DAYS,
"JOHN DOE," and "JANE DOE," and "XYZ CORP.,"
        Respondents-Undertenants.
-----------------------------------------------------------------X

Index #: LT 053564-19

**DECISION AND ORDER**

**Motion Sequences 001, 002**

**RAMSEUR, J.:**

    Petitioner-Landlord Rogers Investments NY, LLC commenced this commercial holdover summary proceeding to recover possession of the captioned Premises—the entire third floor, minus Unit 306—from Respondent-Tenant 49 Bleecker Inc. and a monetary judgment for rent arrears, use and occupancy, and attorneys' fees. Landlord now moves, pursuant to CPLR 3211(b), to dismiss the nine affirmative defenses asserted in Tenant's Answer and, pursuant to CPLR 3212 and/or 409(b), granting summary judgment to Landlord. Tenant opposes and cross-moves, pursuant to CPLR 3211 and 3212 and RPAPL 741, to dismiss. For the reasons below, Tenant's motion is granted in part, Landlord's motion is denied as moot, and the proceeding is dismissed without prejudice.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

    Landlord and the Premises' prior owner, Rogers Investments NV LP (the "Prior Owner"), signed a ten-year lease on December 14, 2012 for the entire third floor of 49 Bleecker Street (*Landlord Exh A* [the "Lease"]), to commence January 1, 2013. The Lease contained the following provision (Art. 2.4 at p 4 [the "Early Termination Provision," emphasis added]):

> Commencing at any time during the fifth (5th) year of the Term, and only during the fifth (5th) year of the Term, Landlord may provide notice of its election, in Landlord's sole and absolute discretion to terminate this Lease without penalty prior to the Expiration Date, but only upon the delivery of a written notice (the "Early Termination Notice") to Tenant at least twelve (12) months prior to the effective date of such early termination. In the event the Landlord shall exercise such right of early termination, the

> Tenant shall quit and surrender possession of the Demised
> Premises on or before the date specified in the Early Termination
> Notice (the "Early Termination Date"). Between the date Landlord
> shall give the Early Termination Notice and the Early Termination
> Date, Tenant shall continue to be obligated under the terms of this
> Lease, including but not limited to Tenant's obligation to pay the
> Fixed Rent and any additional rent herein. *Upon any such early
> termination by Landlord, then, provided Landlord promptly
> returns Tenant's Security Deposit (if Tenant is not then in default)
> this Lease and the Term and estate hereby granted shall terminate
> at noon of such Early Termination Date specified in the Early
> Termination Notice as if such Early Termination Date were the
> Expiration Date of the Term. In the event of Early Termination by
> Landlord as provided herein, Tenant shall be required to deliver
> the Demised Premises to Landlord in broom clean condition
> subject to reasonable wear and tear.*

On November 29, 2017, the Prior Owner sent Tenant an Early Termination Notice via certified mail and FedEx (*Landlord Exhs B, G-H*) which purported to set an Early Termination Date of December 31, 2018. Tenant disputes service of the Early Termination Notice. The Early Termination Notice cited the Early Termination Provision, and directed Tenant to "quit and surrender possession of the Premises on or before noon on the Early Termination Date, and leave the Premise[s] in broom clean condition subject to reasonable wear and tear." The Notice did not mention Tenant's security deposit or allege any default.

In the intervening period, the Prior Owner transferred the Premises and assigned the Lease to Landlord. On November 21, 2018, about one month before the Early Termination Date, Landlord's attorney sent a letter to remind Tenant of the impending termination (*Landlord Exh I*). Tenant's attorney responded on November 29, 2018, denying receipt of the Early Termination Notice (*Landlord Exh J*).[1] Landlord's attorney responded on December 6, 2018 with proof of service (*Landlord Exh K*). Because Tenant did not vacate on the Early Termination Date, and continues (either directly or through the Subtenants) to occupy the Premises today, Landlord commenced this proceeding via Petition. The Petition stated that Tenant's "right to occupy the Premises expired for the reasons set forth in the [attached Early Termination Notice]" (¶ 5).

Landlord now moves (sequence 001): (1) pursuant to CPLR 3211(b), to dismiss Tenant's nine affirmative defenses; (2) pursuant to CPLR 3212, for summary judgment on the Petition; and (3) to schedule a hearing on fees and costs. Tenant cross-moves, pursuant to CPLR 3211 and 3212 and RPAPL 741, to dismiss the Petition.

---

[1] At the time, Tenant David Rozenholc & Associates represented Tenant, which has since retained new counsel (*Landlord Exh N*).

## DISCUSSION

Tenant first argues, in sum and substance, that the undisputed presence of a Loft Law tenant in Unit 306 of the Premises (the "Residential Tenant")—according to Tenant, without its knowledge—renders the Early Termination Provision invalid and/or unenforceable because the Residential Tenant's presence rendered Tenant unable to surrender the entire Premises as defined in the Lease: the "entire Third Floor" (*see Tenant Memo of Law* at I, II, IV). Second, Tenant asserts several jurisdictional arguments, including defective service of the predicate notice, Notice of Petition, and Petition (*see Tenant Memo of Law* at VI and VII). Another jurisdictional argument is that the Early Termination Provision is a condition, not a conditional limitation (*see Tenant Memo of Law* at III and V). Because the resolution of the latter issue impacts the ability of this Court to address any other issues, the Court addresses it first (*see Tenant Memo of Law* at III; *see Kahn v Kahn*, 46 AD2d 638, 639 [1st Dept 1974], citing *Usher v Usher*, 41 AD2d 368, 370 [3d Dept 1973] ["Where the facts presented indicate that the claim of lack of jurisdiction is substantial, the jurisdictional question should be disposed of by the court expeditiously at the threshold of the litigation."]; *see VNO 100 W. 33rd St. LLC v Sq. One of Manhattan*, 22 Misc 3d 560, 564 [Civ Ct NY County 2008, Engoron, J.] ["The key practical difference between a 'conditional limitation' and a 'condition subsequent' is that a conditional limitation permits a summary holdover proceeding in this Court, while a condition subsequent requires a common-law ejectment action in Supreme Court."]).

While Tenant argues that the Early Termination Provision is a condition requiring some element of volition on Landlord's part (*see Tenant Memo of Law* at pp 14-16), Landlord responds that the Provision is a conditional limitation (*see Landlord/Gallaudet Affirm in Opp* ¶¶ 23-37). "The distinction between a condition and a conditional limitation consists principally in this: that, to terminate the lease in the case of a condition, some act must be done upon the happening of the contingent event, such as making an entry; while, in the case of a conditional limitation, the mere happening of the event is, in itself, the limit beyond which the lease no longer exists; in such a case, no entry or other act is necessary to terminate the lease" (*6th Ave. & 24th St. Corp. v Lyon*, 193 Misc 186, 188 [Sup Ct NY County 1948]). "The distinction, however fictitious, permitting the maintenance of a summary proceeding is based upon the lease expiring automatically *so that nothing further need be done by the landlord to terminate the lease*" (*451 Rescue LLC v Rodriguez*, 15 Misc 3d 1140[A], 2007 NY Slip Op 51062[U], *2 [Civ Ct NY County 2007, Engoron, J.] [emphasis added]; *cf Perrotta v W. Regional Off-Track Betting Corp.*, 98 AD2d 1, 5 [4th Dept 1983] [finding a conditional limitation where, once the five-day notice required by the lease is served, the lease term expires automatically because "lessor's option is not one to terminate the lease, but merely to have ... the lapse of time fixed in a notice ... which will without further action or option operate on the lease to cause it to expire on the occurrence of the event"]).

Where, in other words, termination requires more than a mere passage of time—for example, an affirmative act by landlord—a provision is a condition, not a conditional limitation (*see Lerner v Johnson*, 167 AD2d 372, 374 [2d Dept 1990] ["without service of a notice specifying the date of expiration of the lease there can be no termination and the lease remains in effect"]; *see also Maia v Castro*, 139 Misc 2d 312, 315 [NY Dist Ct Nassau County 1988, Heine, J.] ["If a clause in the lease provides that the lease shall terminate upon the occurrence of an

event, only at the option of the landlord, then the lease is a condition subsequent. The lease continues, *until exercise of the landlord's option to forfeit the lease by the use of the right of re-entry, and commencing a proceeding for ejectment.*"] [emphasis added]). "[S]ome act is required to be done to effect the termination of the lease" (Rasch, 2 N.Y. Landlord & Tenant Incl. Summary Proc. § 23:22 [5th ed.]).

Generally, "the determining factor is, of course, the intention of the parties. Such intention must be ascertained from an examination of the whole lease, and not from a particular clause" (*Lyon*, 193 Misc at 188 [finding that a provision relied upon by the landlord to terminate a ten-year lease after only a few years for tenant's minimal failure to repair a sidewalk was not a conditional limitation]). However, because our courts do not favor forfeiture of a leasehold, forfeiture language in leases is to be strictly construed (*151 W. Assoc. v Printsiples Fabric Corp.*, 92 AD2d 76, 80 [1st Dept 1983], citing *Gillette Bros., Inc. v Aristocrat Rest., Inc.*, 239 NY 87, 92 [1924]; *Harar Realty Corp. v Michlin & Hill, Inc.*, 86 AD2d 182, 188 [1st Dept 1982] ["As a general rule, the law will not sanction a forfeiture of possession where no substantial injury occurs or where a mere technical breach of the lease is involved."]; *Helsam Realty Co. v H.J.A. Holding Corp.*, 4 Misc 3d 64, 67 [App Term 2d Dept 2004] ["…a conditional limitation is subject to strict scrutiny so as to avoid a forfeiture of the lease and will not be enforced for minor breaches or where no substantial injury occurs"]). Accordingly, to create a conditional limitation rather than a condition, the agreement must state clearly that it will expire upon the happening of some objective event.

Here, the Early Termination Provision requires—as do most standard conditional limitations—service of a written notice of termination providing at least 12 months' notice. Were that the extent of the provision, analysis would conclude; the Lease would have terminated on the date set forth in the Early Termination Notice: December 31, 2018. However, the Early Termination Provision required at least one other affirmative act by Landlord (emphases added):

> Upon any such early termination by Landlord, then, *provided Landlord promptly returns Tenant's Security Deposit (if Tenant is not then in default)* this Lease and the Term and estate hereby granted shall terminate at noon of such Early Termination Date specified in the Early Termination Notice as if such Early Termination Date were the Expiration Date of the Term. In the event of Early Termination by Landlord *as provided herein*, Tenant shall be required to deliver the Demised Premises to Landlord in broom clean condition subject to reasonable wear and tear.

Clearly, the Early Termination Provision requires additional actions, not a mere passage of time to terminate the Lease—an extra step along the path to termination. That is, upon Landlord's twelve-month notice to terminate, then—*if* Tenant is not in default (apparently at Landlord's sole determination)—Landlord must "promptly return" Tenant's security deposit. In other words, the termination is not self-executing; termination requires additional decision-making and action (*see* 74A NY Jur Landlord and Tenant § 892 ["'Limitation' implies the expiration of the term by the happening of a contingency provided in the lease, *independent of*

*the will of the landlord*, or by any breach by the tenant."] [emphasis added]; *see also Sutton Area Community v City of NY*, 196 AD2d 793, 795 [1st Dept 1993] [rejecting argument that lease was terminated "in [the] absence of the lease terms providing for its self-executing termination in the event of nonpayment of rent"], citing *Perrotta v W. Regional Off-Track Betting Corp.*, 98 AD2d 1, 4 [4th Dept 1983]; *see also Calvi v Knutson*, 195 AD2d 828, 830 [3d Dept 1993] ["A termination resulting from the landlord's option to exercise his or her reserved right of reentry upon the tenant's breach of a lease covenant, because it is not an expiration by lapse of time, consistently has been recognized not to be an expiration within the meaning of RPAPL 711[1]"]; *Gouveneur Gardens Hous. Corp. v Lee*, 2 Misc 3d 525, 528 [Civ Ct NY County 2003, Lebovits, J.] ["…upon the occurence of a conditional limitation, the agreement automatically expires; no other act is necessary to end it."]). Thus, whether there was a default or not—a point contested by the parties—that issue cannot be addressed here because the Early Termination Provision acted as a condition, not a conditional limitation which would have afforded this Court jurisdiction.

Landlord cites numerous cases in support of its position, but all are distinguishable. Landlord cites, for example, *VNO*, (22 Misc 3d 560), noting that Tenant's argument for a condition was rejected in that action. The subject termination provision in that action's lease, however, read that "Landlord reserves the right to terminate this lease [if the landlord needs the premises to restructure the building] provided: (a) Landlord shall give Tenant at least one hundred twenty (120) days' prior notice thereof, and (b) Landlord shall pay [certain moving-out and moving-in expenses]." As an initial matter, the *VNO* court noted—unlike here—that the tenant in that case did not dispute payment of the moving expenses (*id.*). But more importantly, the *VNO* termination provision is simply phrased differently, requiring—in the *VNO* court's words—"subjective" criteria such as the requirement of those premises for restructuring. Here, the phrasing is clearer, including the directive that Landlord shall "promptly" return Tenant's security deposit, thereby signaling—in addition to the Early Termination Notice—Landlord's intent to terminate (*see Vermont Teddy Bear Co., Inc. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004] ["… when parties set down their agreement in a clear, complete document, their writing should ... be enforced according to its terms"]).

Landlord's other citations are also distinguishable. In *Miller v Levi*, (44 NY 489, 490 [1871]), the Court of Appeals found provision at issue to be a conditional limitation where "… the term expires by force of a sale and notice, in sixty days thereafter, *without any further act on the part of the lessor* (emphasis added). Similarly, the provision in *Burnee Corp. v Uneeda Pure Orange Drink Co.*, (132 Misc 435, 436 [App Term 1st Dept 1928]), was found to be a conditional limitation because it required no further act by the landlord to terminate the lease. Landlord's citation to *S. St. Seaport Ltd. Partnership v Jade Sea Rest., Inc.*, 151 Misc 2d 725, 726 [Civ Ct NY County 1991, Tolub, J.], is also inapposite, as that court found the provision at issue to be a condition subsequent, not a conditional limitation as Landlord urges here. The provision placed the onus on the landlord, after tenant had submitted financial statements, to affirmatively exercise its "option to terminate" the lease (*id.*).

Accordingly, the Court grants the branch of Tenant's motion seeking to dismiss for lack of jurisdiction, thereby rendering the other branches of Tenant's cross-motion to dismiss and the entirety of Landlord's motion for summary judgment as moot.

## CONCLUSION

For the above reasons, it is hereby

ORDERED that Respondent-Tenant's cross-motion to dismiss (002) is GRANTED solely to the extent that the Petition is dismissed without prejudice, and the remainder of the cross-motion is DENIED without prejudice as moot; and it is further

ORDERED that the July 24, 2019 trial date shall be stricken; and it is further

ORDERED that Petitioner-Landlord's motion for summary judgment (001) is DENIED without prejudice as moot; and it is further

ORDERED that Respondent-Tenant shall, within 5 days of receipt, serve a copy of this order with notice of entry upon all parties.

This constitutes the decision and order of the Court.

Dated: New York, NY
_____, 2019

Dakota D. Ramseur, J.C.C.

### CPLR 2219(a) Recitation

| Motion/Affidavits, Exhs A-R | 1 |
|---|---|
| Cross-motion/affidavits, Exhs A-O | 2-3 |
| Affirm in Opp, Exhs A-B | 4 |

### Appearances of Counsel

**Petitioner-Landlord**
Lisa Gallaudet, Esq.
Belkin Burden Wenig & Goldman, LLP

**Respondent-Tenant**
Joseph Lee Matalon, Esq.
Matalon, PLLC